Matter of Shane FF. v Alicia GG. (2021 NY Slip Op 06584)





Matter of Shane FF. v Alicia GG.


2021 NY Slip Op 06584


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

531985
[*1]In the Matter of Shane FF., Respondent,
v
Alicia GG., Appellant.
In the Matter of Alicia GG., Appellant,
v
Shane FF., Respondent. (Proceeding No. 2.)

Calendar Date:October 22, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Lisa K. Miller, McGraw, for appellant.
Christopher Hammond, Cooperstown, for respondent.
Susan McNeil, Brooktondale, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered August 25, 2020, which, among other things, partially dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' child.
Shane FF. (hereinafter the father) and Alicia GG. (hereinafter the mother) are the parents of a child (born in 2010). In March 2019, after the mother and the father separated, the father commenced the first of these Family Ct Act article 6 proceedings seeking an initial custody determination regarding the child. Family Court held an initial appearance on the father's petition and, after the mother expressed her intention to seek permission to move to Florida with the child, the court entered a temporary custody order awarding the parties joint legal custody, with primary physical custody to the mother and parenting time to the father "as agreed." In September 2019, the mother commenced the second of these proceedings seeking permission to move with the child to Florida. Following a fact-finding hearing, as well as a Lincoln hearing, Family Court denied the mother's request for permission to move with the child to Florida and granted the parties joint legal custody, with primary physical custody to the mother and parenting time to the father every weekend and at such other times as the parties may agree. The mother appeals.
The mother argues that Family Court should have granted her permission to move to Florida with the child.[FN1] "An initial custody determination is controlled by the best interests of the child, taking into consideration, among other things, 'the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being'" (Matter of Holland v Klingbeil, 118 AD3d 1077, 1078 [2014], quoting Matter of Keen v Stephens, 114 AD3d 1029, 1030 [2014]). Where, as here, a parent seeks to relocate with the child and an initial custody determination has yet to be rendered, the factors set forth in Matter of Tropea v Tropea (87 NY2d 727, 740-741 [1996]) need not be strictly applied (see Matter of Johnson v Johnson, 192 AD3d 1670, 1671-1672 [2021], lv denied 37 NY3d 905 [2021]; Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [2018]; Matter of Ames v Ames, 97 AD3d 914, 915 [2012], lv denied 20 NY3d 852 [2012]). However, "the parent's 'decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child'" (Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1339 [2017], quoting Matter of Bush v Lopez, 125 AD3d 1150, 1150 [2015]; see Matter of Finkle v Scholl, 140 AD3d 1290, 1291 [2016]). In matters of [*2]this nature, Family Court is in a superior position to evaluate the testimony and assess witness credibility, and its credibility determinations and factual findings will not be disturbed if supported by a sound and substantial basis in the record (see Matter of Darnell R. v Katie Q., 195 AD3d 1083, 1084 [2021]; Matter of Megan UU. v Phillip UU., 193 AD3d 1287, 1289 [2021]).
The evidence at the fact-finding hearing, which solely consisted of testimony from the parties, demonstrated that both the mother and the father are loving and involved parents. The evidence established that the parties and the child lived together as a family for most of the child's life, with the mother working outside of the home as the primary earner and the father caring for the child at home during her early childhood years and before and after school once the child reached school age. The mother testified that, now that she and the father had separated, she desired to move with the child to Florida, where she has a greater earning potential and where most of the child's extended maternal family lives. However, the evidence also established that the child has lived her entire life in New York, where she is flourishing academically and socially, and that she has and enjoys close relationships with extended paternal family members, including three adult paternal half siblings who live in or near New York.[FN2]
With respect to her earning potential, the mother, who was employed as an assistant manager at Walgreens, testified that she could apply for and, if accepted, participate in a "Leap program" within Walgreens, which would ultimately enable her to manage her own Walgreens store in Florida. According to the mother, if she were to become a manager, she would earn more money, which would then allow her to work fewer hours, spend more time with the child and save for the child's future. However, at the time of the fact-finding hearing, the mother had not applied for or been accepted into the Leap program in Florida and she acknowledged that the same program and opportunity existed in New York. The mother proposed that, were she and the child to move to Florida, the child could stay with the father in New York every summer and over holidays and school breaks and she offered to cover the costs associated with the child's travel to and from New York. Although the mother's proposal exhibited a willingness to foster the child's relationship with the father, the evidence demonstrated the close bond that the father enjoys with the child, having been heavily involved in the child's day-to-day life for many years. In short, upon review of the evidence and consideration of the various competing factors, we find that a sound and substantial basis exists in the record to support Family Court's determination that it was not in the child's best interests to move to Florida with the mother (see Matter of O'Hara v DeMarsh, 161 AD3d at 1273-1274).
We have examined the mother's remaining [*3]contentions, including her assertion that she received ineffective assistance of counsel, and found them to be without merit (see generally Matter of Bennett v Abbey, 141 AD3d 882, 883-884 [2016]). Accordingly, we will not disturb Family Court's order.
Garry, P.J., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father, as well as the attorney for the child, urge us to affirm Family Court's determination.

Footnote 2: The child also has an adult maternal half sibling who, according to the mother, would move to Florida with her if she were granted permission to relocate.