Matter of Christopher L. v Paula L. (2023 NY Slip Op 00358)

Matter of Christopher L. v Paula L.

2023 NY Slip Op 00358

Decided on January 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 26, 2023

534016
[*1]In the Matter of Christopher L., Respondent,
v
Paula L., Appellant. (And Other Related Proceedings.)

Calendar Date:December 15, 2022

Before:Garry, P.J., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Law Office of Feyi Gaji, Binghamton (Feyi O. Gaji of counsel), for appellant.
Cohen Law, Johnson City (Lauren S. Cohen of counsel), for respondent.
Peter P. Charnetsky, Vestal, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Broome County (Rita Connerton, J.), entered June 8, 2021, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2017). In 2016, the mother moved from British Columbia, Canada to the Town of Union, Broome County to reside with the father. In 2017, the parties were married and the child was born. Approximately six months later, the parties became concerned as the child could not support his neck, and he was subsequently diagnosed with muscular dystrophy. In December 2019, the mother left Broome County and returned to British Columbia without the child. In 2020, the child was also diagnosed with a genetic mutation, which caused the child to have seizures.[FN1] In January 2020, the father filed a petition for custody of the child. In February 2020, the mother filed her own custody petition. Following a fact-finding hearing, Family Court issued a June 2021 order awarding joint legal custody to the parties, primary residency to the father and parenting time to the mother. The mother appeals.
"When rendering an initial custody determination, the paramount consideration for Family Court is determining the best interests of the child[]" (Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [3d Dept 2019] [citations omitted]; see Matter of Damian R. v Lydia S., 182 AD3d 650, 651 [3d Dept 2020]). "In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Nicole V. v Jordan U., 192 AD3d 1355, 1355-1356 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Shane FF. v Alicia GG., 199 AD3d 1264, 1265 [3d Dept 2021]). "Given Family Court's superior ability to observe the witnesses and evaluate credibility, we defer to Family Court's factual findings and credibility determinations and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Darnell R. v Katie Q., 195 AD3d 1083, 1084 [3d Dept 2021] [citations omitted]; see Matter of Megan UU. v Phillip UU., 193 AD3d 1287, 1289 [3d Dept 2021]).
The hearing evidence established that both parties are loving, fit parents. The testimony revealed that while initially the mother was the primary caretaker of the child, since the parties' separation, and with the assistance of the maternal grandmother, the father has taken over that role. The paramount concern here is the extensive medical care that [*2]the child requires, including weekly physical therapy, occupational therapy, speech therapy and a special teacher. The record shows that the father is more capable of providing a stable environment than the mother, and by awarding the father residency of the child he will be able to seamlessly continue the established health care services, doctors and providers utilized by the child since his infancy (see Matter of Amanda YY. v Ramon ZZ., 167 AD3d 1260, 1262-1263 [3d Dept 2018]).
While we are sympathetic to the mother's return to her parent's home in British Columbia and the support of her family, she did not proffer an actual plan to provide for the child's medical care and services if granted custody. Nor did she establish how or if services could be coordinated between the two countries to ensure the child's continued care and services and offered only vague, conclusory testimony that services in Canada would be better (see Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1341 [3d Dept 2017]). Family Court weighed the appropriate factors, including the strengths and weaknesses of each parent, the relative fitness and ability to provide for the child's extensive medical care, and the stability in the child's life given his established medical care and providers while in the father's residence. Accordingly, we cannot say that Family Court's decision to award joint legal custody and primary residency to the father lacks a sound and substantial basis in the record (see Vickie F. v Joseph G., 195 AD3d 1064, 1069 [3d Dept 2021]; Elizabeth B. v Scott B., 189 AD3d 1833, 1835 [3d Dept 2020]; Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1274 [3d Dept 2018]).
Garry, P.J., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The child's seizures are successfully controlled by two medications.