Matter of Jesse FF. v Amber GG. (2023 NY Slip Op 06580)

Matter of Jesse FF. v Amber GG.

2023 NY Slip Op 06580

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

CV-23-0157
[*1]In the Matter of Jesse FF., Respondent,
v
Amber GG., Appellant.

Calendar Date:November 16, 2023

Before:Egan Jr., J.P., Clark, Aarons, Ceresia and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Natanya DeWeese, Ithaca, for respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

Mackey, J.
Appeal from an order of the Family Court of Tompkins County (Joseph R. Cassidy, J.), entered December 15, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2014). A November 2020 consent order awarded the mother sole legal and primary physical custody of the child, with the father enjoying parenting time "as and if they can agree." On February 8, 2022, Tompkins County Department of Social Services (hereinafter DSS) commenced a Family Ct Act article 10 neglect proceeding against the mother alleging, among other things, that the mother had committed educational neglect of both the subject child and the mother's other child (born in 2007), who is the child's half sibling and not the subject of this appeal.[FN1] The next day, the father filed a petition to modify the 2020 order, seeking primary physical custody of the child at his home in Texas due to the mother's allegedly neglectful behavior.[FN2] On June 22, 2022, the mother consented to the entry of a finding of educational neglect without admission against her; she also consented to being placed under DSS supervision, while maintaining physical custody of the child. The father then moved by order to show cause seeking temporary physical custody of the child. A fact-finding hearing was held, after which Family Court temporarily granted physical custody to the father in Texas, pending final decision on the father's modification petition.[FN3] Following a Lincoln hearing, Family Court found that the child's best interests were served by granting sole legal and primary physical custody to the father with frequent video and phone contact to the mother, along with a "graduated" visitation schedule during school breaks. The mother appeals.
Initially, as the mother concedes, Family Court properly found that the finding of neglect established a sufficient change in circumstances that, in turn, required Family Court to conduct an inquiry into whether modifying the 2020 order served the child's best interests (see Matter of Kathleen K. v Daniel L.,177 AD3d 1130, 1132 [3d Dept 2019]; Christopher H. v Taiesha R., 166 AD3d 548, 549 [1st Dept 2018]). However, the mother contends that the court erred in granting the father primary physical custody of the child. "As such, the only issue before us is whether the child's best interests were served by Family Court's order" (Matter of Brandon PP. v Shalalee QQ., 216 AD3d 1263, 1265 [3d Dept 2023] [internal quotation marks and citation omitted]).
"In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative [*2]fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Christopher L. v Paula L.,212 AD3d 1060, 1061 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Brett J. v Julie K., 209 AD3d 1141, 1143 [3d Dept 2022]). "Where, as here, the practical effect of granting the father's request for modification of custody would be relocation of the child, relocation must be considered within that framework" (Matter of Christopher TT. v Lisa UU., 211 AD3d 1371, 1372 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Erick RR. v Victoria SS., 206 AD3d 1523, 1525 [3d Dept 2022]). "Family Court's credibility assessments and factual findings will not be disturbed as long as they have a sound and substantial basis in the record" (Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1268 [3d Dept 2021]).
The fact-finding hearing was held over two days at which the mother, the father, the child's first grade teacher, a DSS caseworker and a Tompkins County probation officer testified. The evidence from the fact-finding hearing establishes that, while living with the mother, the child missed an excessive amount of school during the 2021-2022 academic year, culminating in her having to repeat the first grade. The teacher testified that, although it was recommended that the child attend summer school, the mother did not enroll her and was not responsive to her attempts to communicate via notes sent home with the child, phone calls or emails. She further testified that the child's hygiene near the end of the school year was "dirty[,] [s]he would come with clothes that were dirty or soiled. A couple of days in a row she'd wear them, and she was unkempt." The teacher also stated that the child's clothes were too small for her. She further testified that during periods of remote learning implemented in response to the COVID-19 pandemic, the mother failed to sign a permission slip for the child to participate in virtual school.
The DSS caseworker testified that DSS had concerns about the mother's educational neglect of her children, her substance abuse and her lack of engagement with DSS. The caseworker testified that even after the mother consented to a finding of neglect, the mother refused services directed at ameliorating the issues that gave rise to that proceeding. According to the caseworker, when she visited the mother's home it "smelled dirty and sort of like smoke." She testified that another DSS caseworker who visited the home reported it to be cluttered and dirty with animal feces and urine throughout the house. The DSS caseworker testified that the child's maternal grandmother and the mother's girlfriend were living with the mother and both of the mother's children, and that the mother failed to inform DSS about the girlfriend [*3]living there. She testified that DSS had been informed that there were concerns of "domestic violence between [the mother] and [the girlfriend]," there were "some controlling behaviors and that [the girlfriend] does not necessarily always treat[ ] the children kindly." The caseworker testified that the child's maternal grandmother "reported that [the mother and the girlfriend] got into arguments quite frequently and that [the maternal grandmother] did not believe that [the] environment was appropriate or conducive for [the mother's other child] . . . so . . . [the maternal grandmother] would like to get custody of [the mother's other child] and move out."
For her part, the mother denied receiving any messages from the child's teacher about her recommendation for summer school. The mother testified that the child "sleeps in [the mother's] room with [the mother] on her bed or she sleeps in [the child's maternal grandmother's] room on the floor, [or] on her bed." According to the mother, while she had "some luck" in getting mental health services for herself, she had not been able to get services for the child due to being placed on waiting lists and problems with her cellphone. She testified that, as prescribed by her doctor, she takes "nerve pain medication[,] . . . Suboxone[,] . . . ADHD meds, and . . . antidepressant and anxiety meds." The mother admitted that her relationship with her girlfriend was "toxic" and "not good." The record further establishes that despite her knowledge of the child's allergies to dogs, the mother harbored two dogs and had allowed the child to be dirty and to suffer from lice infestation, parasites and skin and vaginal infections.
As for the father, the evidence reveals that he lives in Texas with his wife, her child from a previous marriage and their daughter. His spouse was present throughout the proceedings. Upon learning of the neglect petition filed against the mother, he immediately filed a petition for custody of the child. The father expressed his concern for the child's education. The evidence shows that he has a safe, stable and suitable home and an adequate income to provide for the child's needs. The father testified to a willingness to foster a positive relationship between the mother and the child, stating that he would encourage the child to call the mother.
As Family Court noted, however, the custody determination as to the child was made more difficult because of the father's criminal history. The record reveals that before the child's birth, the father pleaded guilty to endangering the welfare of a child arising out of a 2011 incident and was placed on probation for three years. He later violated his probation and was resentenced to a term of incarceration. Although the father's past behavior is indeed concerning, the record reveals that he has no other criminal history and no child-protective history. Moreover, the DSS caseworker indicated on the last day of the fact-finding hearing that if the court [*4]did not place the child with the father on a temporary basis, pending a final decision and order in the custody case, DSS would seek to remove the child from the mother. Notably, despite being aware of his history and the allegations of the father's former probation officer, the DSS caseworker supported placement of the child with him and also indicated that DSS' counterpart agency in Texas had no concerns with the child being placed with the father.
As Family Court acknowledged, the father is not without serious faults. Nevertheless, the court carefully examined the relevant factors in its best interests analysis and found that the father is better able to provide for and meet the needs of the child and is more likely to comply with court orders and foster the child's relationship with the mother. Additionally, although not determinative (see Matter of Erick RR. v Victoria SS., 206 AD3d at 1526), we note that the attorney for the child (hereinafter AFC) continues to support the father having primary physical custody. Deferring to the court's factual findings and credibility assessments (see Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1414 [3d Dept 2021]), we find that there is a sound and substantial basis in the record to support the custody determination (see Matter of Mark RR. v Billie RR., 95 AD3d 1602, 1602-1603 [3d Dept 2012]; Matter of Christopher T. v Jessica U., 90 AD3d 1092, 1095 [3d Dept 2011]; Munson v Lippman, 2 AD3d 1252, 1253 [3d Dept 2003]; cf. Matter of Carl v McEver, 88 AD3d 1089, 1090 [3d Dept 2011]; compare Matter of Thomas BB. v Jessica YY., 219 AD3d 1578 [3d Dept 2023]; Matter of Mariah K. [Rachael K.-Jay L.], 165 AD3d 1379, 1379-1384 [3d Dept 2018]), and it will therefore not be disturbed.
Finally, as the mother concedes, inasmuch as she did not move for the removal of the AFC, she failed to preserve for our review her contentions that the AFC improperly substituted his judgment for that of the child and that, overall, he failed to adequately represent the child (see Matter of Olivia RR. [Paul RR.], 207 AD3d 822, 824-825 [3d Dept 2022]; Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1329 [3d Dept 2019], lv denied 34 NY3d 909 [2020]; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1297 [3d Dept 2017]).
The mother's remaining contentions, to the extent not expressly addressed herein, have been evaluated and found to be without merit.
Egan Jr., J.P., Clark, Aarons and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: DSS primarily alleged that the child had failed first grade and had missed 102 days of school during the 2021-2022 school year.
Footnote 2: The father relocated to Texas in 2018.
Footnote 3: The mother's challenges to the temporary order were rendered moot by the issuance of the appealed-from final order of custody and parenting time (see John M. v Tashina N., 218 AD3d 935, 936 n 1 [3d Dept 2023]; Matter of Devin W. v Jessica X., 204 AD3d 1111, 1111 [3d Dept 2022]).