Matter of Leslie QQ. v Daniel RR. (2024 NY Slip Op 05857)

Matter of Leslie QQ. v Daniel RR.

2024 NY Slip Op 05857

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

CV-23-1364 CV-23-1365
[*1]In the Matter of Leslie QQ., Respondent,
v
Daniel RR., Appellant. (And Another Related Proceeding.)

Calendar Date:October 16, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ.

Paul J. Connolly, Delmar, for appellant.
Sandra M. Colatosti, Albany, for respondent.
Michelle I. Rosien, Philmont, attorney for the child.

Mackey, J.
Appeals (1) from an order of the Family Court of Columbia County (Jonathan D. Nichols, J.), entered June 20, 2023, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child, and (2) from an order of said court, entered June 20, 2023, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, finding respondent to have committed a family offense, and issued an order of protection.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) were married in 2016 and are the parents of a daughter (born in 2017). The mother also has a son (born in 2013) from a previous relationship. The mother and the father lived together with the children until December 2022, when the mother vacated the marital apartment with the children. Following the parties' separation, the mother filed a family offense petition alleging that the father had committed several family offenses. The petition sought a no-contact order of protection in favor of her, their daughter and her son, which Family Court temporarily issued. In January 2023, the mother filed an initial custody petition, seeking sole custody of the daughter and permission to move the daughter from New York to Mississippi, where her entire family resides.[FN1] The court issued a temporary order granting legal and physical custody of the daughter to the mother. The mother subsequently filed a petition alleging that the father violated the temporary order of protection by electronically communicating with her son. Following a hearing concerning the three petitions, Family Court ordered that the mother have sole custody of the daughter and granted her permission to relocate with the daughter to Mississippi. The father was awarded supervised in-person parenting time "at the mother's discretion," along with weekly phone or electronic communication supervised by the mother or a person designated by the mother and access to the daughter's medical and educational records. The court also found that the father had committed the family offenses of assault in the third degree and criminal obstruction of breathing and issued a two-year order of protection in favor of the daughter, the son and the mother. Family Court further determined that the father willfully violated the temporary order of protection. The father appeals.
The father initially contends that Family Court erred in granting the mother sole legal custody and granting her request to relocate to Mississippi.[FN2] "In making an initial custody determination, [Family Court's] paramount consideration is the best interests of the child" (Elizabeth B. v Scott B., 189 AD3d 1833, 1834 [3d Dept 2020] [citations omitted]; see Hassan v Barakat, 171 AD3d 1371, 1373 [3d Dept 2019]). "In determining the best interests of a child, a court must consider various factors, including the parents' ability to provide a stable home environment for the child, the child's wishes[*2], the parents' past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Herrera v Pena—Herrera, 146 AD3d 1034, 1035 [3d Dept 2017] [internal quotation marks and citations omitted]; see Matter of Patricia RR. v Daniel SS., 172 AD3d 1471, 1472 [3d Dept 2019]). "Where, as here, an initial custody determination involves one parent who wishes to relocate with the child, the parent's decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child" (Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Matter of Shane FF. v Alicia GG., 199 AD3d 1264, 1265 [3d Dept 2021]). It is well settled that "[b]ecause Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record" (Matter of O'Hara v DeMarsh, 161 AD3d at 1272; see Matter of Shane FF. v Alicia GG., 199 AD3d at 1264).
The evidence at the fact-finding hearing consisted of, among other things, the testimony of the mother and the father and text messages between them. The hearing clearly established that the parties have an acrimonious relationship. They both acknowledged that contact between them often escalated into arguments and, at times, physical violence, some of which has occurred in front of the children. The father testified that the mother has been the sole financial provider for the family for the duration of the parties' relationship and that he does not pay child support. At the time of the hearing, the father was unemployed and was living in a homeless shelter. The father testified that he has been unable to work outside of the home since his early 20s because he suffered from posttraumatic stress disorder, anxiety, hypertension and agoraphobia. The father admitted a history of self-harm and cutting. Although he stayed at home with the children while the mother worked, he spent most of the day sleeping, playing computer games and talking to friends online. The father had no plans to seek employment but, rather, plans to apply for spousal support and social security disability. The father does not have a driver's license or a vehicle. Despite his acknowledgment that he suffered from mental health issues and had been cutting himself since he was a teenager, the father denied needing mental health treatment to address those issues. He stopped taking Lexapro that was prescribed for anxiety and depression. The father admittedly did not clean the marital apartment during the month that the mother and the children were not residing [*3]there, allowing maggots to fester on unwashed dishes.
The mother, meanwhile, was gainfully employed. The record reflects that she has been the primary caretaker of the daughter since birth, notwithstanding her work commitments. She was the primary keeper of the house and regularly took the children to doctor and dental appointments and arranged for neighbors to care for them when the father overslept, as he often did. The father never brought the children to, or attended, their medical appointments and has never attended their school conferences. The mother testified about the father's deteriorating mental health and instances of domestic violence, and text messages between the parties reveal that he has threatened to interfere with the mother's employment and has also threatened self-harm.
The mother testified that she sought to return to Mississippi because it would provide a better family support system for both her and the children. She testified that her entire family lives in Mississippi and that her parents have agreed to care for the children for free if she moved there. Until she is able to find her own housing, the mother would reside with her mother and stepfather, who live in a single-family home on five acres of farmland. The mother testified that, were she allowed to relocate, she would be able to transfer her current job and, with free childcare, could enter back into a managerial or supervisory role, which would entail a pay raise. The hearing testimony also reflected that the mother, who bore all responsibility for dealing with the educational and medical needs of the children, had determined what schools the children would attend in Mississippi. She would also be closer to her brother, who lives in Mississippi and has children that are close in age to hers. The mother believes she would be in a better position financially and emotionally if able to move to Mississippi and "would love" it if the father could be able to call her phone and talk to the daughter or do video chat. She is willing to "bring [the father] down for a month and put him in a hotel and then he could have visitation for an entire month as much as he wanted." She is also willing to travel to New York during school vacations to provide parenting time for the father.
Under the circumstances, we find that a sound and substantial basis exists in the record to support Family Court's determination that it was in the daughter's best interests to award the mother sole legal custody (see Eschbach v Eschbach, 56 NY2d 167, 172-173 [1982]; Brenna EE. v Andrew DD., 214 AD3d 1039, 1041 [3d Dept 2023]; Matter of Steven U. v Alisha V., 209 AD3d 1184, 1186 [3d Dept 2022]). As to relocation, although we recognize the importance of an ongoing relationship between the father and the daughter, the foregoing proof reflects a sound and substantial basis in the record for Family Court's determination that the lives of the mother and the daughter would be enhanced economically and emotionally [*4]by the relocation to Mississippi (see Matter of Carol Q. v Charlie R., 230 AD3d 948, 950 [3d Dept 2024]; Matter of Amber GG. v Eric HH., 217 AD3d 1103, 1106 [3d Dept 2023]; Matter of Celinda JJ. v Adrian JJ., 198 AD3d at 1205-1206).[FN3]
Notwithstanding, we agree with the father that Family Court improperly delegated its authority to the mother over the father's in-person parenting time and telephone and electronic contact with the daughter (see Matter of Theressa M. v Gaddiel M., 228 AD3d 1040, 1041 [3d Dept 2024]; Matter of Laura E. v John D., 216 AD3d 1274, 1277 [3d Dept 2023]).[FN4] With respect to the father's telephone and electronic contact with the daughter, inasmuch as the mother agrees that the father should have telephone and electronic contact three times per week, we modify that portion of the order accordingly. With respect to the father's in-person parenting time, although we are empowered to independently review the record and decide parenting time issues, given the father's instability, the fact that the mother has relocated to Mississippi and the passage of time, we cannot make that determination here. As such, we remit the matter to Family Court for a hearing for the purpose of fashioning a schedule of supervised in-person parenting time (see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 755-756 [3d Dept 2021]; Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [3d Dept 2020]; Matter of Taylor v Jackson, 95 AD3d 1604, 1604-1605 [3d Dept 2012]).
Next, the father contends that Family Court erred in sustaining the mother's family offense petition. The petitioner in a family offense proceeding bears the burden of establishing, by a fair preponderance of the evidence, that the respondent committed one or more of the family offenses specified in Family Ct Act § 821 (1) (a) (see Family Ct Act § 832; Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1294 [3d Dept 2023]). Here, the mother endeavored to prove that the father had committed the family offenses of, among others, criminal obstruction of breathing (see Penal Law § 121.11 [a]) and assault in the third degree (see Penal Law § 120.00 [1]). "A person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . applies pressure on the throat or neck of such person" (Penal Law § 121.11 [a]). "A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d at 1294-1295 [internal quotation marks and citations omitted]; see Matter of Carly W. v Mark V., 225 AD3d 984, 985 [3d Dept 2024[*5]]).
Upon our review of the record, we find that a fair preponderance of the evidence supports Family Court's conclusion that the father committed the family offenses of criminal obstruction of breathing and assault in the third degree. As to the family offense of criminal obstruction of breathing, the mother described two instances where the father had choked her. Specifically, she testified that after an argument in 2018 or 2019, she was on the floor on her back and the father placed his hands around her neck, obstructing her breathing. She testified that in 2019 or 2020, the father pushed her to the floor and had her in a choke hold with his arm around her neck, thereby preventing her from breathing. As to assault in the third degree, the mother testified about an incident in April 2022 when, after having some friends over to play board games, the parties had an argument that resulted in the father hitting her with an open palm multiple times and kicking her in the stomach and chest, while the children were present. The police were called but she did not press charges. The father admitted that on that night he was inebriated and "flipped out." He testified that he "got violent," "was punching" and "was kicking."
We are unpersuaded by the father's contention that dismissal of the petition is warranted because the mother erroneously referred to the April 2022 event as having occurred in the "summer of 2022" in the family offense petition. In the petition, the mother alleged that "[d]uring this past summer of 2022, [the father] assaulted me during an argument, slapping and pushing me in the hallway of our apartment building, I tripped and fell over, while I was on the ground, [the father] began kicking me in the stomach." Following service of the petition, the father made a demand for a bill of particulars to which the mother responded. In the bill of particulars, the mother amplified her petition by providing more detail and a date in April 2022. The father does not deny receiving a copy of the bill of particulars. In any event, we find "summer of 2022" was close enough to April 2022 so as to not be confusing or deprive the father of notice and due process (see CPLR 3013; Family Ct Act §§ 165 [a]; 821 [1] [a]; People v Watt, 81 NY2d 772, 774 [1993];Matter of Stefanow v Stefanow, 214 AD3d 1215, 1217-1218 [3d Dept 2023]; Matter of Qin Fen Wang v Chee Kiang Foo, 171 AD3d 1187, 1188 [2d Dept 2019]).
We next reject the father's contention that Family Court abused its discretion in denying his request, made on the day of the fact-finding hearing, for substitute counsel. "An indigent party's right to assigned counsel under the Family Court Act is not absolute" (Matter of Brendan N. [Arthur N.], 79 AD3d 1175, 1178 [3d Dept 2010] [internal quotation marks and citations omitted], lvs denied 16 NY3d 702 [2011], 16 NY3d 735 [2011]). "In order to have substitute counsel appointed, a party must establish that good cause for release existed necessitating dismissal [*6]of assigned counsel" (Matter of Mooney v Mooney, 243 AD2d 840, 841 [3d Dept 1997] [citation omitted]; accord Matter of Bracken v Bracken, 225 AD3d 1241, 1241 [4th Dept 2024], lv denied 42 NY3d 901 [2024]). Here, the father failed to make that showing as he did not articulate any grounds for his request — legitimate or otherwise — and his request reflected only a delaying tactic (see Matter of Eckstein v Young, 176 AD3d 813, 814 [2d Dept 2019], lv denied 34 NY3d 912 [2020]; Matter of Lillian SS. [Brian SS.], 146 AD3d 1088, 1093 [3d Dept 2017], lvs denied 29 NY3d 992 [2017], 29 NY3d 919 [2017]; Matter of Wiley v Musabyemariya, 118 AD3d 898, 900-901 [2d Dept 2014], lv denied 24 NY3d 907 [2014]). As such, the court did not deny the father's constitutional nor statutory right to counsel.
Finally, the evidence adduced at the hearing was sufficient to establish that the father willfully violated the temporary order of protection (see Matter of Harmony F. [William F.], 212 AD3d 1028, 1030 [3d Dept 2023]; Matter of Allen v Emery, 187 AD3d 1339, 1342 [3d Dept 2020]).
Aarons, J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the order in the custody proceeding is modified, on the law, without costs, by reversing so much thereof as granted Daniel RR. supervised visitation and telephone and electronic contact with the child as determined by the mother; Daniel RR. shall have telephone or electronic contact with the daughter three days per week on days and times that are mutually agreeable to the parties; matter remitted to the Family Court of Columbia County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the order in the family offense proceeding is affirmed, without costs.

Footnotes

Footnote 1: The mother did not file a custody petition as it relates to the son as the son is not the biological child of the father and the father did not file a custody petition claiming extraordinary circumstances entitling him to custody of the son (see Matter of Mirely M. v Wilbert L., 221 AD3d 1227, 1228-1229 [3d Dept 2023]; Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1200 [3d Dept 2021], lvs denied 37 NY3d 901 [2021], 37 NY3d 902 [2021]).

Footnote 2: The attorney for the child is in support of the mother retaining sole legal and primary physical custody.

Footnote 3: The record reveals that at the time of Family Court's decision, the father had very limited contact with the daughter due to the order of protection.

Footnote 4: The mother concedes that Family Court improperly delegated to her its authority to determine the father's visitation with the daughter.