Matter of Britney A. v Jonathan A. (2025 NY Slip Op 03232)

Matter of Britney A. v Jonathan A.

2025 NY Slip Op 03232

Decided on May 29, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 29, 2025

CV-24-0256
[*1]In the Matter of Britney A., Appellant,
v
Jonathan A., Respondent.

Calendar Date:March 26, 2025

Before:Clark, J.P., Aarons, Pritzker, Ceresia and Fisher, JJ.

Lisa K. Miller, McGraw, for appellant.
Joan E. Mencel, Endwell, for respondent.
Thomas G. Shannan, Ithaca, attorney for the children.

Aarons, J.
Appeal from an order of the Family Court of Broome County (Veronica Gorman, J.), entered January 26, 2024, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2015 and 2020). The parties were married in 2015 and cohabitated with the children in the City of Binghamton, Broome County. The parties separated in January 2023, and the father moved out of the marital residence. The mother commenced this proceeding in March 2023 seeking custody of the children. With this proceeding pending, the mother, in August 2023, relocated with the children to Maryland to live with her family, without notifying the father or Family Court of her change in residence. Fact-finding and Lincoln hearings ensued, after which the court granted the parties joint legal custody and awarded physical custody to the father. The court further provided that, if the mother also relocated to Broome County or Chenango County, she could reapply for physical custody of the children without a further showing of changed circumstances. Contending that the court should have awarded her physical custody,[FN1] the mother appeals.
"When rendering an initial custody determination, the paramount consideration for Family Court is determining the best interests of the children" (Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [3d Dept 2019] [citations omitted]; accord Matter of Christopher L. v Paula L., 212 AD3d 1060, 1061 [3d Dept 2023]). "In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[ren]'s [lives], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1144 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Aden HH. v Charish GG., 226 AD3d 1109, 1110-1011 [3d Dept 2024]). "Further, where, as here, an initial custody determination involves one parent who wishes to relocate with the child, the parent's decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child" (Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1339 [3d Dept 2017] [internal quotation marks and citations omitted]; accord Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [3d Dept 2018]). "Given Family Court's superior ability to observe the witnesses and evaluate credibility, we defer [*2]to Family Court's factual findings and credibility determinations and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Christopher L. v Paula L., 212 AD3d at 1061 [internal quotation marks and citations omitted]; see Matter of Jahari BB. v Zada CC., 232 AD3d at 1144-1145).
The evidence established that the mother was the children's primary caregiver, as she tended to most of the children's health, educational and social activities. While the parties resided together, the mother worked various part-time jobs, and the father was employed full time outside of the home and took care of the children when the mother was at work. After the father moved out of the marital residence, he lived rent-free in an apartment in Binghamton with a nonfunctioning toilet; he was evicted from that apartment in November 2023 when his landlord demanded rent without repairing the toilet. The father moved to the City of Norwich, Chenango County, where the paternal grandmother lives. There, the father obtained a job and a two-bedroom apartment, where he lives alone and has a room for the children. The apartment is located about half a mile from the school where the older child would be enrolled, and the father had looked into daycare for the younger child and had made childcare arrangements with his family members, many of whom live in a nearby town.
The mother testified that, after the father moved out, he lost his job and stopped paying child support. Unable to make rent, the mother was evicted from the marital residence and could not secure financial assistance or affordable housing in Binghamton. The mother felt alone and unsupported living so far away from her own family in Maryland, so she resigned from her job and relocated there with the children. The mother believed that her family could help with childcare so she could work longer hours; but, because the mother's family also worked, the help the mother hoped to receive did not materialize. After initially moving into a family member's house and enrolling the older child in a nearby school using that address, the mother moved with the children down the street to the maternal grandmother's two-bedroom apartment where two other adult family members already lived. Consequently, the children slept on the sofa in the living room while the mother slept on the floor (compare Matter of Mallory v Jackson, 51 AD3d 1088, 1089 [3d Dept 2008], lv denied 11 NY3d 705 [2008]).
Additionally, the evidence established that the mother would not encourage the children's relationship with the father (see Matter of Bush v Lopez, 125 AD3d 1150, 1151 [3d Dept 2015]). On cross-examination, the mother confirmed she did not discuss moving to Maryland in advance because she knew the father would not consent and "would have prevented [her] from moving." The mother also did not fully comply with Family Court's temporary visitation schedule. Moreover, the mother frequently ignored the [*3]father's calls and text messages asking to talk to the children and refused to give him the children's address in Maryland. By contrast, the father indicated he would want the mother to regularly see the children if he was granted physical custody.
The mother points out, however, that the father has not been a stable presence in the children's lives. Indeed, the father admitted he began experiencing depression and misusing alcohol in January 2023 and withdrew from the children's lives from April 2023 to May 2023. Yet, Family Court credited the father's testimony that he had stopped drinking and was receiving treatment for his depression, which treatment enabled him to resume visits with the children before the mother moved to Maryland in August 2023. Despite this history, the record indicates that the father is better positioned to provide an adequate and stable home for the children relative to the mother, who was unsure if she would remain in Maryland, had applied for "[z]ero" jobs there as a result of the lack of childcare, and whom the court found to be essentially homeless (see Ostrander v McCain, 68 AD3d 1480, 1482 [3d Dept 2009]).
In light of the foregoing, and deferring to Family Court's assessment of witness credibility and factual findings, the court's determination that it is not in the children's best interests to live with the mother in Maryland, and the award of physical custody to the father subject to the mother's reapplication for custody upon relocating to this state, are supported by a sound and substantial basis in the record (see Matter of Shane FF. v Alicia GG., 199 AD3d 1264, 1266 [3d Dept 2021]; Matter of O'Hara v DeMarsh, 161 AD3d at 1273-1274; Matter of Streid v Streid, 46 AD3d 1155, 1157 [3d Dept 2007]). To the extent the mother asserts that the attorney for the children did not provide meaningful representation, such claim is unpreserved (see Matter of Marina C. v Dario D., 228 AD3d 1016, 1019 [3d Dept 2024], lv denied 42 NY3d 909 [2024]; Matter of Jesse FF. v Amber GG., 222 AD3d 1254, 1258-1259 [3d Dept 2023]). Finally, though not dispositive, we note that the court's determination is supported by the attorney for the children on appeal (see Matter of Faea OO. v Isaiah PP., 220 AD3d 1132, 1135 [3d Dept 2023], lv denied 41 NY3d 901 [2024]; Matter of Holly F. v Daniel G., 193 AD3d 1292, 1294 [3d Dept 2021], lvs denied 37 NY3d 904 [2021], 37 NY3d 904 [2021]).
Clark, J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother does not challenge the award of joint legal custody to the parties.