Matter of Holly P. v George Q. (2025 NY Slip Op 04134)

Matter of Holly P. v George Q.

2025 NY Slip Op 04134

Decided on July 10, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-24-0584
[*1]In the Matter of Holly P., Respondent,
v
George Q., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of George Q., Appellant,
v
Holly P., Respondent. (Proceeding No. 2.)
In the Matter of Holly P., Respondent,
v
George Q., Appellant. (Proceeding No. 3.)

Calendar Date:June 5, 2025

Before:Clark, J.P., Pritzker, Lynch, Ceresia and Fisher, JJ.

Matthew C. Hug, Albany, for appellant.
Amanda FiggsGanter, Albany, for respondent.
Peter J. Scagnelli, Albany, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Albany County (Sherri Brooks- Morton, J.), entered March 4, 2024, which, among other things, partially granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, for custody of the parties' child.
George Q. (hereinafter the father) and Holly P. (hereinafter the mother) are parents of the subject child (born in 2021). The parties' relationship ended before the child was born. After the child was born, the mother commenced the first family offense petition against the father (proceeding No. 1) alleging he committed, among other things, assault, stalking and menacing, based on several incidents, including two instances where the father shoved the mother to the ground. The mother and the child were granted a temporary order of protection against the father, which was in place from July 2021 until January 2022. In October 2021, the father commenced a custody proceeding and filed an amended custody petition the next day (proceeding No. 2) seeking custody of the child. Thereafter the mother filed a custody petition (proceeding No. 3) also seeking custody of the child. In May 2022, the mother filed a second family offense petition against the father alleging he committed harassment by repeatedly emailing and calling her. Pending fact-finding, the father had supervised parenting time with the child, and during the fact-finding hearing the father was granted unsupervised parenting time with the child.
After multiple days of fact-finding spanning just over a year, Family Court found that the father had committed the family offense of attempted assault in the third degree (proceeding No. 1) but did not issue a new order of protection.[FN1] Additionally, Family Court ordered that the parties share joint legal custody with the mother having primary physical custody; the father was granted unsupervised parenting time every other week (proceedings No. 2 and 3). The father appeals.
The father contends that Family Court's finding that he committed attempted assault in the third degree is not supported by a sound and substantial basis in the record. "In [a] family offense proceeding[ ], [the] petitioner [is] obliged to prove by a fair preponderance of the evidence that [the] respondent committed one of the family offenses set forth in Family Ct Act § 821 (1) (a). Whether a family offense has been committed is a factual issue for Family Court to resolve, and [this Court] accord[s] great weight to its assessments of witness credibility" (Matter of Carly W. v Mark V., 225 AD3d 984, 985 [3d Dept 2024] [citations omitted]; see Matter of David FF. v Isis GG., 233 AD3d 1301, 1302 [3d Dept 2024]). As relevant here, "attempted assault in the third degree requires proof that defendant 'engage[d] in conduct which tends to effect the commission of [assault],' with the 'intent to cause physical injury to another' " (People v Repanti, 24 NY3d 706, 710 [2015], quoting Penal Law §§ 110.00, 120.00 [1]).[FN2] "Physical [*2]injury" is an "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "Whether a person possesses the requisite intent to commit a family offense may be inferred from the conduct itself or the surrounding circumstances" (Matter of Michele OO. v Kevin PP., 161 AD3d 1248, 1249 [3d Dept 2018] [internal quotation marks and citation omitted]; accord Matter of Monique WW. v Dean XX., 233 AD3d 1413, 1414 [3d Dept 2024]).
Here, a fair preponderance of the evidence adduced at fact-finding supports Family Court's determination that the father committed attempted assault in the third degree pursuant to Penal Law §§ 110.00 and 120.00 (1) as the mother testified that the parties were having a disagreement, and she was in the father's face when the father shoved her to the ground and then lunged at her in a threatening manner. The surrounding circumstances of the disagreement between the parties, the father shoving the mother and the father lunging at the mother demonstrate the father's intent to cause physical injury to the mother (see Penal Law §§ 110.00, 120.00 [1]; Matter of Saquipay v Puzhi, 160 AD3d 879, 880 [2d Dept 2018]). That the court did not issue an order of protection, based upon the absence of any issues between the parties since the expiration of the temporary order, does not, as the father contends, negate that the mother met her burden of establishing that the father committed a family offense (see generally Matter of Gil v Gil, 55 AD3d 1024, 1025 [3d Dept 2008]).
The father contends that Family Court's award of primary physical custody to the mother lacks a sound and substantial basis in the record, arguing that the evidence indicates that awarding primary physical custody to the father would be in the best interests of the child because of the mother's alleged interference in the father's relationship with the child. "The paramount consideration in an initial custody determination is the best interests of the child. In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Steven U. v Alisha V., 209 AD3d 1184, 1184-1185 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of William Z. v Kimberly Z., 212 AD3d 1036, 1037-1038 [3d Dept 2023]). "Given Family Court's superior ability to observe the witnesses and evaluate credibility, [this Court] defer[s] to Family Court's factual findings and credibility determinations and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Christopher L. v Paula L., 212 AD3d 1060, 1061 [3d Dept 2023] [internal [*3]quotation marks and citations omitted]; see Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1144-1145 [3d Dept 2024]).
The mother testified that before the child was born, the father continuously sent her emails after she asked him to stop. The mother also testified that the father was not invited to a baby shower held prior to the child's birth, but that he came anyway and caused a scene, resulting in the police being called. The mother testified that she did not allow the father to attend the birth of the child at the hospital. She also testified about an email that the father sent her a few hours after the child was born in which he stated that he was nonviolent and would be going to the hospital to make Facebook live videos to show that he wants to be involved in the child's life.[FN3] The mother also played voicemails the father left her on the day the child was born. The mother testified that the father did not stop contacting her until after he was served the order of protection in August 2021. The mother testified that other than the supervised visits, the father did not have any other access to the child. The mother explained that the child has her own room at her house and spends time with the mother's family. The mother also testified that she has a safe and stable home and that she is not employed because she is in school full time, but she is supporting herself and the child. The mother stated that the child does not have any contact with the father's family. She explained that the reason she sought to limit the father's contact with her was his history of harassment. The mother also testified that, in addition to two incidents during which the father pushed her to the floor, he was verbally abusive toward her and talked about how he beat people up. The mother also testified that the father has hit her. Additionally, the mother testified that the father was admitted to Samaritan Hospital in May 2021 for mental health reasons. The mother requested that the father be ordered to do a mental health evaluation and complete treatment, and that if the father did treatment, she would be more comfortable with him having unsupervised visits.
The father testified that he was upset that he was prevented from attending the birth of the child. He testified that at the time of the fact-finding hearing, the parties' relationship was "[c]ontentious, but functional." He also testified that he wants to grow his relationship with the child and promote a relationship between the mother and the child. On cross-examination, the father testified that he now lives with his father and has a bedroom for the child and that he is self-employed as a handyman with an inconsistent schedule. Given the foregoing, although there is evidence of the mother excluding the father from the child's life, in deferring to Family Court's credibility determinations, "there is a sound and substantial basis in the record to support Family Court's finding that it was in the child's best [*4]interests to grant the [mother] primary physical custody" given that the mother has cared for the child since the child was born and provides the child with a stable home environment (Matter of David V. v Roseline W., 217 AD3d 1112, 1113 [3d Dept 2023], lv denied 40 NY3d 905 [2023]; see Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 767 [3d Dept 2021]).
Finally, contrary to the father's conclusion, "we are satisfied that the record sufficiently reflects that [the father] waived [his] statutory right to counsel knowingly, intelligently and voluntarily" (Matter of Joshua UU. v Martha VV., 118 AD3d 1051, 1054 [3d Dept 2014]; see Matter of Kevin McK. v Elizabeth A.E., 151 AD3d 600, 601 [1st Dept 2017], appeal dismissed 30 NY3d 1028 [2017], lv dismissed & denied 32 NY3d 944 [2018]).
Clark, J.P., Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court dismissed the other family offense petition filed by the mother.

Footnote 2: Contrary to the father's contention, we discern no error in Family Court not identifying the subsection of attempted assault in the third degree committed by the father as "this Court may independently review the record and determine whether the evidence supports Family Court's finding that the [father] committed one or more family offense" (Matter of Heather E. v Christopher F., 189 AD3d 1937, 1938 [3d Dept 2020]; see Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1040 [3d Dept 2023], lv denied 39 NY3d 915 [2023]).

Footnote 3: A seven-part video was admitted into evidence and viewed by Family Court.