Matter of Brooke PP. v Joshua QQ. (2025 NY Slip Op 04139)

Matter of Brooke PP. v Joshua QQ.

2025 NY Slip Op 04139

Decided on July 10, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-24-1487
[*1]In the Matter of Brooke PP., Respondent,
v
Joshua QQ., Appellant.

Calendar Date:June 3, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Powers, JJ.

Christopher Hammond, Cooperstown, for appellant.
Law Office of Mary Jane Murphy, Binghamton (Mary Jane Murphy of counsel), for respondent.
Robert C. Kilmer, Owego, attorney for the child.

Clark, J.P.
Appeal from an order of the Family Court of Tioga County (Adam Schumacher, J.), entered August 2, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
In March 2023, petitioner (hereinafter the mother) and respondent (hereinafter the father) settled matters of custody and parenting time relating to their mutual child (born in 2020). Pursuant to that initial custody order, which was entered in Otsego County Family Court (Lambert, J.), the parties shared legal custody, and the father had three days of parenting time with the child each week; although not expressly stated in the order, the mother had the remaining four days of parenting time each week. That order further specified a custodial exchange location that was much closer to the father's residence than it was to the mother's.[FN1] The mother commenced the instant proceeding in Tioga County Family Court in January 2024, alleging that she had obtained new employment and that her work schedule required modification of the prior order. Following a fact-finding hearing, Family Court (Schumacher, J.) found that the mother had demonstrated a change in circumstances and that the best interests of the child would be served by modifying the times and locations of the custodial exchanges, while keeping the amount of parenting time each parent had intact. As such, the court issued an order continuing joint legal custody, shifting the start and end of the father's parenting time to accommodate the mother's work schedule and specifying two new custodial exchange locations. The father appeals.[FN2]
We disagree with the father's contention that, as the initial custody determination was issued in Otsego County, Family Court erred in declining to transfer these proceedings there. Rather, as the mother had resided in Tioga County since the initial custody order, venue in that county was proper (see Family Ct Act § 171; Matter of Tamara XX. v William YY., 199 AD3d 1244, 1248-1249 [3d Dept 2021]). The issue "of whether to grant or deny [an] application for a change in venue [thus] fell squarely within Family Court's discretion" (Matter of Carter v Van Zile, 162 AD3d 1127, 1128 [3d Dept 2018]; see Family Ct Act § 174). As the father failed to establish good cause for the transfer, Family Court did not abuse its discretion in denying his motion (see Matter of Carter v Van Zile, 162 AD3d at 1128-1129; compare Matter of Julie G. v Yu-Jen G., 81 AD3d 1079, 1080 [3d Dept 2011]; Matter of Henry v Skratt, 11 AD3d 691, 692 [2d Dept 2004]).
Next, as the father concedes, the mother's change in employment constituted a requisite change in circumstances, as her work schedule interfered with the custodial exchange schedule (see Matter of Jacob L. v Heather L., 228 AD3d 1191, 1193-1194 [3d Dept 2024]; Matter of Lundgren v Jaeger, 162 AD3d 1427, 1428-1429 [3d Dept 2018]). With this threshold inquiry satisfied, "Family Court was tasked with fashioning a [*2]custodial arrangement that would serve the child's best interests" (Matter of Samantha E. v Nicholas F., 233 AD3d 1295, 1296 [3d Dept 2024]). "In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Laura E. v John D., 216 AD3d 1274, 1275 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Mary N. v Scott M., 218 AD3d 890, 892 [3d Dept 2023]). "Given the superior position of Family Court to observe and evaluate the witnesses' testimony, its factual findings and credibility assessments are to be accorded great deference, and we will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Giuseppe V. v Tiffany U., 224 AD3d 1122, 1124 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Steven OO. v Amber PP., 227 AD3d 1154, 1156 [3d Dept 2024]; Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1557 [3d Dept 2019]).
Here, the record is clear that both the mother and the father are loving, fit parents. Nevertheless, Family Court's determination to grant the mother primary residential custody is supported by the record. Since the prior order, the mother has been the child's primary caretaker, as the child spends a majority of the week with the mother, and the mother has been responsible for the child's medical and dental needs and has enrolled the child in gymnastics and nursery school (see Matter of Christopher L. v Paula L., 212 AD3d 1060, 1062 [3d Dept 2023]; Matter of Gentile v Warner, 140 AD3d 1481, 1482-1483 [3d Dept 2016]). The child also shares a close bond with her younger maternal half-sibling, who resides full time with the mother and her husband (see Matter of Samantha E. v Nicholas F., 233 AD3d at 1298; Matter of James GG. v Bamby II., 85 AD3d 1227, 1228 [3d Dept 2011]).
We also decline to disturb Family Court's designation of two new custodial exchange locations, both of which remained closer to the father's residence. At the hearing, the mother explained that she sought to modify the exchange locations due to the significant burden caused by undertaking the bulk of the transportation. Indeed, pursuant to the location specified in the prior order, the mother was required to drive approximately an hour each way, while the father's drive was approximately 20 minutes. Although the father testified that any modification to the exchange location would cause him to suffer financial difficulty, the court determined that his opposition stemmed from resentment over the mother's relocation from Otsego County during the pendency of the [*3]prior proceedings. Deferring to such credibility determinations, we discern no abuse of discretion in Family Court selecting two new exchange locations, particularly where they continue to be closer to the father's residence (see Matter of Lundgren v Jaeger, 162 AD3d at 1429-1430; see also Matter of Schneider v Lascher, 72 AD3d 1417, 1419 [3d Dept 2010], lv denied 15 NY3d 708 [2010]; compare Matter of David V. v Roseline W., 217 AD3d 1112, 1115 [3d Dept 2023], lv denied 40 NY3d 905 [2023]). As the order on appeal is supported by a sound and substantial basis in the record, we find no basis upon which to disturb it.
The father's remaining contentions, to the extent not expressly addressed herein, have been reviewed and found to be lacking merit.
Aarons, Pritzker, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The parties both resided in Otsego County, but the mother relocated to Tioga County during the pendency of the prior proceedings.

Footnote 2: The mother and the attorney for the child both argue in favor of affirmance.