Matter of Celinda JJ. v Adrian JJ. (2021 NY Slip Op 05900)





Matter of Celinda JJ. v Adrian JJ.


2021 NY Slip Op 05900


Decided on October 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 28, 2021

530660
[*1]In the Matter of Celinda JJ., Respondent,
v
Adrian JJ., Appellant.

Calendar Date:September 8, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Pamela B. Bleiwas, Ithaca, for appellant.
Christian J. Root, Vestal, for respondent.
Joan E. Mencel, Endwell, attorney for the children.



Clark, J.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered October 2, 2019, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of four children (born in 2011, 2012, 2015 and 2017). On June 12, 2019, the father was sentenced to an aggregate prison term of 15 years for his convictions of rape in the first degree — a crime that he perpetrated against the mother — and rape in the third degree — a crime that he perpetrated against another female. That same day, the mother commenced this proceeding seeking permission to relocate with the children to South Carolina. In July 2019, in resolution of a separate Family Ct Act article 6 proceeding brought by the children's paternal grandmother, Family Court denied the paternal grandmother custody of and visitation with the children, granted the mother sole legal and primary physical custody of the children and directed that the mother's relocation petition be scheduled for a hearing.[FN1] Following that hearing, at which the father declined to testify, Family Court granted the mother's request to relocate to South Carolina with the children and directed that the father could send the children letters four times per year, with such letters subject to the mother's review. The father appeals, arguing that Family Court's determination is not supported by a sound and substantial basis in the record.
A custodial parent's proposed relocation provides the change in circumstances that is ordinarily required to modify an existing custody order (see Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1108-1109 [2021], lv denied 37 NY3d 901 [2021]; Matter of Kristen MM. v Christopher LL., 182 AD3d 658, 659 [2020]; Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [2019]). The parent seeking permission to relocate with the children bears the burden of establishing, by a preponderance of the evidence, that the proposed relocation is in the best interests of the children (see Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]; Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [2018], lv denied 31 NY3d 909 [2018]). In determining whether the best interests of the children are served by relocating with the custodial parent, courts must consider a variety of factors, including "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and [the] child[ren]'s li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and [the] child[ren] through suitable [parenting time] arrangements[*2]" (Matter of Tropea v Tropea, 87 NY2d at 740-741; see Matter of Hammer v Hammer, 163 AD3d 1208, 1209 [2018]). "Given Family Court's superior position 'to make factual findings and credibility determinations, its decision will not be disturbed if supported by a sound and substantial basis in the record'" (Matter of Barner v Hampton, 132 AD3d 1098, 1099 [2015], quoting Matter of Cowper v Vasquez, 121 AD3d 1341, 1342 [2014], lv denied 24 NY3d 913 [2015]).
The mother testified that she and the children live in a two-bedroom apartment in Broome County, that she is trained and employed as a licensed practical nurse and that, as a single parent, she has to regularly work overtime to pay for day care and household expenses. The mother stated that, following her rape and the father's subsequent arrest and conviction for that crime, she received little help from the children's paternal grandparents, who lived nearby, but that she received and relied upon increased support from the children's maternal grandparents, who traveled from South Carolina to assist with child care and to provide emotional support during the father's legal proceedings.[FN2] The hearing evidence established that the mother's primary motivation for relocating to South Carolina was her desire to be closer to the maternal grandparents, who, according to the mother, had offered to provide housing and free child care. The mother testified that, with free child care, she would not have to work overtime, which would enable her to spend more time with the children and pursue a registered nursing degree. The mother stated that she had reached her maximum earning capacity as a licensed practical nurse in Broome County and that she would have a greater earning potential were she to become a registered nurse. With respect to housing, the mother testified that the maternal grandparents planned to build an addition on their home to accommodate the mother and the children and that the maternal grandparents had offered to purchase the mother and the children a mobile home to live in — on their six-acre property — while the addition was being completed. The mother testified that, with free child care and greater familial support in South Carolina, she hoped to save money to eventually purchase a home in South Carolina, where the cost of living is significantly lower than Broome County. In light of the foregoing evidence, we agree with Family Court that a relocation to South Carolina would enhance the lives of the mother and the children economically and emotionally (see Matter of James TT. v Shermaqiae UU., 184 AD3d 975, 977 [2020]; Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1342 [2019]).
The evidence further demonstrated that the mother's relocation to South Carolina with the children would have a minimal impact upon the father's relationship with the children, as he was serving an extended period of incarceration and there had been little contact between the father and the children following [*3]the father's arrest and conviction.[FN3] Although the move would have some impact upon the children's relationship with their paternal grandparents, Family Court previously determined, after a hearing, that it was not in the children's best interests to visit with the paternal grandmother. Similarly, with respect to the children's two half siblings in New York, the mother testified that she maintains contact with the half siblings' mothers and that they would coordinate visitation between the children and the half siblings. Upon review of the evidence and consideration of the applicable factors (see generally Matter of Tropea v Tropea, 87 NY2d at 740-741), we find that a sound and substantial basis exists in the record to conclude that the children's best interests would be served by allowing the mother and the children to relocate to South Carolina (see Matter of James TT. v Shermaqiae UU., 184 AD3d at 977-978; Matter of Perestam v Perestam, 141 AD3d 757, 758-759 [2016]). Accordingly, we will not disturb Family Court's order.
Garry, P.J., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Family Court also reserved the father's right to apply for an order of visitation.

Footnote 2: The mother also testified that the two older children had stayed in South Carolina with the maternal grandparents for six weeks during their most recent summer break.

Footnote 3: The mother testified that, in the three months preceding the fact-finding hearing, the father had written only two letters to the children. The father, who did not testify, did not affirmatively seek visitation with the children.