Matter of Amber GG. v Eric HH. (2023 NY Slip Op 03059)

Matter of Amber GG. v Eric HH.

2023 NY Slip Op 03059

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

535490
[*1]In the Matter of Amber GG., Appellant,
v
Eric HH., Respondent.

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Lisa K. Miller, McGraw, for appellant.
Donna C. Chin, Niverville, attorney for the children.

Egan Jr., J.
Appeal from an order of the Family Court of Broome County (Brett S. Noonan, J.), entered May 25, 2022, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the subject children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born 2011 and 2017). Pursuant to a June 2019 order that was entered upon the agreement of the parties, they were awarded joint legal custody of the children, with the mother to have primary physical placement and the father to have parenting time on alternate weekends, certain holidays and whatever additional times were mutually agreeable. In July 2021, the mother filed this modification petition seeking permission to relocate to Florida with the children and to adjust the father's parenting time accordingly.
The parties testified at a fact-finding hearing on the petition, after which the trial attorney for the children advised that the elder child was willing to be interviewed in a Lincoln hearing and asked that, although she did not believe that the hearing would uncover "anything that we haven't already heard," the hearing only be skipped if the parties agreed to forgo one. Notwithstanding the request of the attorney for the mother that the hearing be held, Family Court declined to do so. The court then rendered a decision from the bench in which it found the testimony of both parties to be credible but — noting, among other things, the mother's ongoing mental health treatment in New York, the elder child's enrollment in a therapeutic afterschool program, and the financial feasibility of carrying out visitation with the father if the relocation occurred — that relocation was not in the best interests of the children. The court accordingly determined that the petition should be denied, then issued a written order dismissing the petition with prejudice. The mother appeals and, with the support of the appellate attorney for the children, argues that Family Court's determination is not supported by a sound and substantial basis in the record. The father has not filed a brief in response.
We reverse. The proposed relocation of a custodial parent provides the change of circumstances necessary to consider modifying an existing custody order, leaving it incumbent upon the mother to "establish[], by a preponderance of the evidence, that the proposed relocation is in the best interests of the children" (Matter of Celinda JJ. v Adrian JJ., 198 AD3d 1203, 1204 [3d Dept 2021], lv denied 37 NY3d 918 [2022]; see Matter of Thomas SS. v Alicia TT., 206 AD3d 1534, 1535 [3d Dept 2022]; Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1341 [3d Dept 2019]). The pertinent factors in conducting a best interests analysis include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on [*2]the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and child[ren]'s [lives] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child[ren] through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; see Matter of Thomas SS. v Alicia TT., 206 AD3d at 1535; Matter of Fisher v Perez, 165 AD3d 1419, 1420 [3d Dept 2018]).
We accordingly turn to the hearing evidence and, in so doing, defer to the assessment of Family Court that both parents were credible in their testimony (see Matter of Thomas SS. v Alicia TT., 206 AD3d at 1535). By way of background, although the parties are from New York, they moved with the children to Florida and lived there with the maternal grandmother from July 2016 to October 2017. When they returned to Broome County in the fall of 2017, it is undisputed that they did so to allow the father and the children to say goodbye to the ailing paternal grandmother and that they intended to return to Florida. The father testified that a lack of money, as well as the fact that the maternal grandmother had thrown him out of her residence, prevented them from returning immediately after the paternal grandmother passed away later in 2017. The parties were unable to return to Florida before they separated in August 2018, after which the father moved to the Town of Sidney, Delaware County and the mother and the children lived in the City of Binghamton, Broome County.
The mother testified that she sought to return to Florida because it would allow her to work and would provide a better family support system for both her and the children. The mother explained that she had not found, and did not believe that she could find, work in New York due to both her mental and physical difficulties and the lack of family support to help her care for the children, and she was left reliant upon public assistance and informal child support payments from the father to make ends meet. In Florida, however, the mother testified that a residence for her and the children was ready at the trailer park where her mother and stepfather, her daughter and other relatives resided. The mother had a full-time secretarial job lined up at the trailer park, and she made clear that her relatives would be available to watch the children if they were not in school and she was working. The hearing testimony also reflected that the mother, who bore almost all responsibility for dealing with the educational and medical needs of the children, had determined what schools the children would attend and where they would receive medical care and mental health services in Florida. She added that the elder child would participate in counseling and a therapeutic afterschool program in Florida that were equivalent to the services he was receiving in New York. She [*3]also made clear that she wanted the father to have extended periods of parenting time over the summer and on longer school breaks and expressed her willingness to transport the children — in a vehicle that she lacked in New York but would be available to her in Florida — halfway for custodial exchanges with him. "Taken as a whole, the mother's testimony demonstrated
. . . that the mother's reasons for wanting to relocate were familial and economic and that the proposed relocation would likely enhance the lives of the mother and the child[ren] economically and emotionally" (Matter of James TT. v Shermaqiae UU., 184 AD3d 975, 977 [3d Dept 2020] [citations omitted]).
As for the father's opposition to relocation, he maintained a relationship with the children, saw them on alternate weekends as contemplated by the 2019 order, and facilitated a relationship between them and various relatives on his side of the family. The father also suggested that the mother might "try to figure out some way to get [him] to sign off on" his parental rights if relocation were allowed, and he questioned the environment for the children in Florida given the mother's mental health challenges and what he viewed as a difficult relationship between the elder child and the maternal grandmother, as well as between the elder child and his half sister, when the parties resided in Florida.[FN1] That said, the father's own testimony reflected that he rarely sought out additional parenting time with the children despite the mother's willingness to allow it and that his involvement in, and knowledge about, their education, extracurricular activities and medical care was extremely limited. Further, the trial attorney for the children did not share the father's skepticism and supported the mother's petition, advising Family Court that the stated preference of the children was to move to Florida with the mother and see the father as often as they could (see Matter of Fisher v Perez, 165 AD3d at 1422; Matter of Davis v Ogden, 109 AD3d 539, 540 [2d Dept 2013]).
Although we recognize the importance of an ongoing relationship between the father and the children, the foregoing proof reflects that the mother is, by far, the more involved parent and the primary caregiver, that the lives of the mother and the children would be enhanced by the relocation to Florida, that the children want to make that move, and that the mother is willing to facilitate significant visitation between the children and the father if it occurs. As such, Family Court's determination denying the mother's relocation request is not supported by a sound and substantial basis in the record (see Matter of Fisher v Perez, 165 AD3d at 1421-1422; Matter of Smith v Hoover, 24 AD3d 1096, 1097-1098 [3d Dept 2005]; see also Matter of Latoya B. v Marvin D., 191 AD3d 1123, 1124-1125 [3d Dept 2021]; Matter of James TT. v Shermaqiae UU., 184 AD3d at 977-978). Thus, we grant the petition and remit this matter to Family Court to establish [*4]an appropriate schedule of parenting time for the father and to ensure that he have regular phone and/or video calls with the children (see Matter of Fisher v Perez, 165 AD3d at 1422).
Garry, P.J., Lynch, Fisher and McShan, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, petition granted, and matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision, including the holding of a Lincoln hearing with the elder child on the issue of parenting time.

Footnotes

Footnote 1: The mother, in contrast, testified to her mental health treatment — noting in the process that the father offered her no extra assistance with the children when she was dealing with the issue around the time of the 2019 order — and testified that her mental health issues were "under control." She also added that the elder child and the half sister were close and spoke to each other "almost daily."