Matter of Faea OO. v Isaiah PP. (2023 NY Slip Op 05430)

Matter of Faea OO. v Isaiah PP.

2023 NY Slip Op 05430

Decided on October 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 26, 2023

535300
[*1]In the Matter of Faea OO., Respondent,
v
Isaiah PP., Appellant.

Calendar Date:September 12, 2023

Before:Egan Jr., J.P., Lynch, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Sandra M. Colatosti, Albany, for appellant.
Alexandra J. Buckley, Clifton Park, for respondent.
Karen R. Crandall, Schenectady, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Saratoga County (Amy J. Knussman, J.), entered March 25, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2013). In 2020, Family Court (Jensen, J.), issued an order, upon the father's default, granting the mother sole legal and primary physical custody of the child, with the father receiving parenting time on alternating weekends. In January 2021, the mother relocated to Tennessee with the child. In March 2021, the father filed a petition seeking to enforce the 2020 custody order and then filed a second petition in November 2021 seeking to modify this order. In that same month, the mother filed a custody modification petition seeking permission to relocate to Tennessee with the child. On November 24, 2021, Family Court dismissed the father's petitions based upon his default. Following both a fact-finding and Lincoln hearing on the mother's petition, Family Court, among other things, continued sole legal and primary physical custody with the mother, granted the father parenting time consisting of six weeks during the summer and specific school breaks, additional parenting time with the child in Tennessee upon reasonable notice to the mother and reasonable telephone contact with the child. Further, Family Court ordered that each parent be financially responsible for transporting the child to him or her. The father appeals, arguing that Family Court's determination is not supported by a sound and substantial basis in the record.
"A custodial parent's proposed relocation provides the change in circumstances that is ordinarily required to modify an existing custody order" (Matter of Celinda JJ. v Adrian JJ., 198 AD3d 1203, 1203 [3d Dept 2021] [citations omitted], lv denied 37 NY3d 918 [2022]; see Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1341 [3d Dept 2019]). The parent seeking permission to relocate bears the burden of establishing, by a preponderance of the evidence, that such relocation is in the child's best interests (see Matter of Kristen MM. v Christopher LL., 182 AD3d 658, 659 [3d Dept 2020]; Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [3d Dept 2018], lv denied 31 NY3d 909 [2018]). In making such a determination, "courts must consider, among other factors, each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable parenting time arrangements" (Matter [*2]of James TT. v Shermaqiae UU., 184 AD3d 975, 976 [3d Dept 2020] [internal quotation marks, brackets and citation omitted]; see Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1109 [3d Dept 2021], lv denied 37 NY3d 901 [2021]). "This Court accords deference to Family Court's credibility assessments and findings of fact, and we will not disturb a relocation determination if we find it to be supported by a sound and substantial basis in the record" (Matter of Anwar RR. v Robin RR., 196 AD3d 756, 758 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; see Matter of Thomas SS. v Alicia TT., 206 AD3d 1534, 1535 [3d Dept 2022]).
The mother testified that she married her current spouse in August 2020 and that they have a two-year-old child together. She stated that her spouse is in the military service and he was transferred to Tennessee, thus necessitating the relocation. Although the mother reported that she worked part time in New York, she indicated that she has not worked outside the home since relocating to Tennessee, in order to care for her two-year-old child. The mother further testified that the subject child has acclimated well since moving to Tennessee, is doing very well in school, has made many friends and calls the father weekly.
It is undisputed that throughout the child's life, the mother has been his primary caregiver. Relevant to the relationship between the father and the child, the mother testified that while the father has exercised his alternate weekend parenting time, he has never sought any additional time, asked to see the child's report card, attended the child's parent-teacher conferences nor attended the child's extracurricular activities. The mother stated that when she and the child resided in New York, the child was enrolled in an individualized education program and that the father never participated in any of these meetings. She reported that the child is highly intelligent and has undergone counseling to develop tools to help him function in school and that the father has neither participated in nor sought out any information regarding the child's counseling.
The father testified that he is employed in a sales position with an investing group, that he owns his own home and has custody and physical placement of his six-year-old daughter from another relationship. While he largely ratified the mother's testimony with respect to his nonparticipation in many of the child's school and extracurricular activities, he blamed this on the mother's failure to inform him about them. The father further testified that he has exercised his parenting time and that he and the child enjoyed many outdoor activities together, including riding four wheelers, camping, fishing, biking and swimming. He argues that the relocation will negatively impact the quality and quantity of the contact between him and the child, and on appeal argues that the parenting time granted to him under the new custody order is insufficient [*3]to preserve his relationship with the child.
Initially, the record supports Family Court's determination that the mother's testimony "substantiated the necessity for the relocation" to Tennessee due to her husband's military transfer and his role as the sole financial provider for their family. A review of the record confirms that the mother met her burden of demonstrating by a preponderance of the evidence that relocation to Tennessee is in the child's best interests. She is, and always has been, the child's primary caregiver, the child has acclimated well to the move, and the mother has continued the child's individualized education program and intends to continue his counseling in Tennessee. Moreover, Family Court mitigated the relocation's impact on the child's contact with the father by granting the father an equivalent, albeit differently distributed, amount of parenting time as he had in New York, by ordering six weeks during the summer and specific school breaks, additional time in Tennessee on notice, and reasonable telephone contact (see Matter of Latoya B. v Marvin D., 191 AD3d 1123, 1125 [3d Dept 2021]; Matter of James TT. v Shermaqiae UU., 184 AD3d at 978). In our view, Family Court's determination to grant the mother's relocation petition reflects a careful weighing of the relevant factors in an effort to serve the best interests of the child and is supported by a sound and substantial basis in the record (see Matter of Hoppe v Hoppe, 165 AD3d 1422, 1425 [3d Dept 2018], lv denied 32 NY3d 912 [2019]; Matter of Cole v Reynolds, 110 AD3d 1273, 1276 [3d Dept 2013]). Finally, although not determinative, Family Court's determination is in accord with the position advanced by the attorney for the child during the relocation proceeding and on appeal (see Matter of Holly F. v Daniel G., 193 AD3d 1292, 1294 [3d Dept 2021], lv denied 37 NY3d 904 [2021]; Matter of Schnock v Sexton, 101 AD3d 1437, 1438 n [3d Dept 2012]).
Nor do we find that Family Court abused its discretion in ordering the mother and the father to each be responsible for the costs related to transporting the child to him or her, despite the father's contention that the party who relocated should be fully responsible for all costs. In support of his contention, the father relies on several cases indicating that the relocating party made a "conscious decision" to relocate. However, Family Court determined that the mother's relocation was necessitated by her husband's military transfer. Additionally, Family Court took judicial notice that the mother agreed to reduce the father's child support prior to her relocation.[FN1] Given the foregoing, we find that there is a sound and substantial basis for Family Court's apportioning of transportation costs (see Matter of Andrea H. v Justin I., 202 AD3d 1325, 1326 [3d Dept 2022]; Matter of Latoya B. v Marvin D., 191 AD3d at 1126; Matter of Ivan R. v Lisandra F., 188 AD3d 543, 544 [1st Dept 2020]).[FN2]
Egan Jr., J.P., Lynch, Ceresia and Fisher, [*4]JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court properly determined that the mother's assent to the reduction in child support was not related to her relocation.

Footnote 2: Although the father argues that the reduced amount of child support reflects the presumptive amount pursuant to the Child Support Standards Act, there is no evidence of the father's income. Instead, the support order contains this standard language while incorporating the father and the mother's agreement.