Matter of Jahari BB. v Zada CC. (2024 NY Slip Op 05922)

Matter of Jahari BB. v Zada CC.

2024 NY Slip Op 05922

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

CV-22-2079
[*1]In the Matter of Jahari BB., Appellant,
v
Zada CC., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Zada CC., Petitioner,
v
Jahari BB., Appellant. (Proceeding No. 3.)

Calendar Date:October 18, 2024

Before:Egan Jr., J.P., Clark, Ceresia, Powers and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for appellant.
Vicki J. Prager, Northville, attorney for the child.

Mackey, J.
Appeal from an order of the Family Court of Fulton County (J. Gerard McAuliffe Jr., J.), entered October 20, 2022, which, among other actions, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, for custody of the parties' child.
Jahari BB. (hereinafter the father) and Zada CC. (hereinafter the mother), who never married, are the parents of one child (born in 2022). The parties had been living together, but separated in May 2022, and the mother left the family home with the child. On May 13, 2022, the father filed a petition seeking custody and Family Court issued a temporary order (hereinafter Order No. 1) directing the mother not to remove the child from New York. Without knowledge of that order, on or about the same day the mother took the child to Florida. Thereafter, the father filed a petition seeking to enforce the May 2022 temporary order, and on June 3, 2022 Family Court issued a second temporary order (hereinafter Order No. 2) that directed the mother to "immediately return" the child to New York. On June 8, 2022, the court held an initial appearance, at which the parties appeared virtually. At that time, the court advised the mother of the June 3 order, requiring her to immediately return the child.
At some point in August 2022, the mother returned to New York with the child and a hearing was held to establish a temporary custody arrangement. On September 1, 2022, the mother filed a petition for sole custody, with permission to relocate to Florida, where her family lived.[FN1] On September 6, 2022, Family Court entered a temporary custody order granting the parties joint legal and physical custody. That order set a visitation schedule based on the child remaining in New York. Thereafter, following a fact-finding hearing, on October 20, 2022 Family Court issued a final order that granted the parties joint legal custody, with the mother having primary physical custody of the child. In doing so, the court granted the mother's request to relocate to Florida with the child. The court also dismissed the father's violation petition, finding that any noncompliance by the mother with the May 2022 and June 2022 orders had not been willful. The father appeals.[FN2]
"When rendering an initial custody determination, the paramount consideration for Family Court is determining the best interests of the child" (Matter of Christopher L. v Paula L., 212 AD3d 1060, 1061 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; accord Matter of Brandon QQ. v Shelby QQ., 216 AD3d 1212, 1213 [3d Dept 2023]). " 'In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and [*2]emotional development and overall well-being' " (Matter of Nicole V. v Jordan U., 192 AD3d 1355, 1355-1356 [3d Dept 2021], quoting Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1421 [3d Dept 2018]). Factors relevant to the determination of whether relocation is in the child's best interest include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; see Matter of Amber GG. v Eric HH., 217 AD3d 1103, 1104 [3d Dept 2023]; Matter of Celinda JJ. v Adrian JJ., 198 AD3d 1203, 1204 [3d Dept 2021], lv denied 37 NY3d 918 [2022]). In an initial custody determination, "strict application of the relevant [Tropea] factors to be considered in a potential relocation" is not required (Matter of Baker v Spurgeon, 85 AD3d 1494, 1496 [3d Dept 2011], lv dismissed 17 NY3d 897 [2011]; see Matter of Shane FF. v Alicia GG., 199 AD3d 1264, 1265 [3d Dept 2021]; Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [3d Dept 2018]). "Rather, the parent's decision to relocate, as well as 'the effect an award of custody would have on the child's relationship with the noncustodial parent,' are other relevant factors to consider" (Matter of Baker v Spurgeon, 85 AD3d at 1496, quoting Matter of Lynch v Gillogly, 82 AD3d 1529, 1530 [3d Dept 2011]). "Because Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record" (Matter of O'Hara v DeMarsh, 161 AD3d at 1272 [citations omitted]; see Matter of Shane FF. v Alicia GG., 199 AD3d at 1265).
The hearing testimony revealed that both parents wish to be an active part of the child's life and are willing to financially support her. The mother testified that, in Florida, she would be better able to provide financially for the child and would have greater familial support. She testified that her support system in New York is limited to one of her aunts, whereas in Florida, she lives with her mother and siblings. She testified that she had secured salaried employment in Florida and is working on obtaining her GED. The mother also stated that it was her and the father's original intent to permanently live in Florida. At the time of the hearing, the father was unemployed. He has no family in Florida and lives in the City of Gloversville, Fulton County, with his mother.
During the time immediately after the child's birth, both parents jointly cared for her[*3]. After Family Court issued the temporary custody order, there were instances when the father ended his parenting time early because the child was "fussy." On one occasion, he ended his parenting time early to attend a basketball tournament. Another time, he ended his parenting time early to avoid the child potentially witnessing a physical fight at the Fonda Fair between him and some kids who "didn't like" him.
The mother raised concerns about the father's violent tendencies. Although Family Court did not make a specific finding regarding the presence of domestic violence, testimony lends credibility to the father having violent tendencies. While in Florida, he allegedly threatened to punch the mother's autistic brother. On a different occasion, he allegedly pushed the mother up against a wall. During an argument in New York, he allegedly punched a wall that was near the child and tried grabbing her out of the mother's hands.
Contrary to the attorney for the child's position, we do not find that allowing the child to live in Florida with the mother would make it "impossible" for the father to visit her. First, the custody order requires the mother to pay for transportation costs related to the parenting time schedule. Second, the father's past behavior indicates a willingness and ability to travel to Florida. In June 2021, he and the mother went to Florida and stayed there for about a month. The mother testified that the trip was with the intent of permanently moving to Florida. Although the father testified that the trip was only a visit, he also testified that there had been no set end date. This indicates the possibility, not impossibility, of a parenting arrangement that includes the child residing in Florida. In view of the foregoing, and giving the requisite deference to Family Court's assessment of the witnesses' credibility, we find that the court's determination to award primary physical custody of the child to the mother, and to permit her to relocate to Florida, has a sound and substantial basis in the record (see Matter of Christopher L. v Paula L., 212 AD3d at 1061-1062; cf. Matter of Baker v Spurgeon, 85 AD3d at 1496-1497).
Although Family Court's determination does not address the father's contention of parental alienation, inasmuch as our authority is as broad as Family Court's in custody matters (see Dewitt v Sheiness, 42 AD3d 776, 777 [3d Dept 2007]), we disagree with the father's contention that the mother engaged in parental alienation. Parental alienation is "an act so inconsistent with the best interests of the child[ ] as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent" (Entwistle v Entwistle, 61 AD2d 380, 384-385 [2d Dept 1978], appeal dismissed 44 NY2d 851 [1978]; see Matter of Ruiz v Carie, 179 AD3d 1069, 1069-1070 [2d Dept 2020], lv denied 35 NY3d 1002 [2020]; see also Matter of Greene v Robarge, 104 AD3d 1073, 1076 [3d Dept 2013]; Matter of Dobies v Brefka, 83 AD3d [*4]1148, 1151-52 [3d Dept 2011]; Matter of Youngok Lim v Sangbom Lyi, 299 AD2d 763, 764, 766 [3d Dept 2002]). Although the father did not see the child for about three months after the mother took her to Florida, the father failed to present sufficient evidence of parental alienation. The record demonstrates that the mother offered the father time with the child, but he declined to take advantage of it. Moreover, there is no evidence that the mother remained in Florida for the "sole purpose" of alienating the child (Matter of Smith v Bombard, 294 AD2d 673, 675 [3d Dept 2002], lv denied 98 NY2d 609 [2002]). Rather, the mother largely attributes the reason for remaining in Florida to her lack of financial resources, work schedule, school schedule and dealing with a death in her family.
The father next contends that Family Court erred by not holding the mother in contempt for violating its temporary orders. "A party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of John U. v Sara U., 195 AD3d 1280, 1283 [3d Dept 2021] [internal quotation marks and citations omitted]; see El-Dehdan v El-Dehdan, 26 NY3d 19, 35 [2015]; Matter of Mundell v New York State Dept. of Transp., 185 AD3d 1470, 1472 [4th Dept 2020]). Although willfulness is not an element of civil contempt, inability of the alleged contemnor to comply with an order is a defense (see El-Dehdan v El-Dehdan, 26 NY3d at 35; McCurty v Roberts, 227 AD3d 1469, 1471 [4th Dept 2024]; Matter of Ainsley v Parke, 215 AD3d 827, 828 [2d Dept 2023]; Matter of Coward v Biddle, 210 AD3d 1083, 1084 [2d Dept 2022]). An appellate court "will not disturb Family Court's determination on a violation petition absent an abuse of discretion" (Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1338 [3d Dept 2020]; see Matter of Brent O. v Lisa P., 161 AD3d 1242, 1243 [3d Dept 2018]).
Family Court's Order No. 1 required, in relevant part, that the child "[was] not to be removed from New York State/Fulton County for residential, pending further order of [the] Court." The record indicates, however, that at the time Family Court issued that order, the mother had already left New York with the child, thereby making it impossible for her to violate it. Thus, the court properly dismissed the father's violation petition as to Order No. 1 (see El-Dehdan v El-Dehdan, 26 NY3d at 35; Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]). Family Court's Order No. 2, of which the mother became aware, required that she "immediately return the child to the State of New York." In contravention of that order, the mother did not return to New York with the child for over two months. There is no dispute that Order No. 2 was lawful and that the father's right [*5]to parent the child was hampered by her being in Florida (see S.L. v J.R., 27 NY3d 558, 562 [2016]; Matter of Zwillman v Kull, 90 AD3d 774, 775 [2d Dept 2011]). However, Family Court credited the mother's testimony that she could not immediately return because she did not own a car and lacked the funds to purchase a plane ticket. Deferring to Family Court's credibility determinations, we find no basis in the record to disturb its denial of the motion seeking to hold the mother in contempt.
Egan Jr., J.P., Clark, Ceresia and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother filed an amended petition on September 14, 2022.

Footnote 2: The attorney for the child argues that while Family Court had a sound andsubstantial basis to award primary physical custody to the mother, a sound and substantial basis does not exist in the record to support Family Court's determination that relocation was in the child's best interests. The attorney for the child sides with the father with respect to his violation petition.