Matter of Mark JJ. v Stephanie JJ. (2025 NY Slip Op 04133)

Matter of Mark JJ. v Stephanie JJ.

2025 NY Slip Op 04133

Decided on July 10, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-24-0180
[*1]In the Matter of Mark JJ., Respondent,
v
Stephanie JJ., Appellant.

Calendar Date:May 27, 2025

Before:Egan Jr., J.P., Aarons, Pritzker, Ceresia and Mackey, JJ.

Hegge & Confusione, LLC, New York City (Michael Confusione of counsel), for appellant.
Zucker Law Offices, PC, Goshen (Evan D. Zucker of counsel), for respondent.
Betty J. Potenza, Milton, attorney for the child.
Christopher Obstarczyk, Latham, attorney for the children.

Ceresia, J.
Appeal from an order of the Family Court of Sullivan County (Jacqueline Ricciani, J.), entered January 4, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the three subject children (born in 2011, 2013 and 2016). After the father and the mother divorced in 2017, a custody order was entered on consent granting sole legal and primary physical custody of the children to the mother, with parenting time for the father every week from Friday night through Sunday night and with the parties splitting summers and holidays. Following entry of the consent order, the father moved closer to the mother to help care for the children, and he had liberal parenting time with them beyond what was provided in the consent order.
In November 2021, the mother informed the father that she desired to move to North Carolina to provide a better and safer environment for the children, and the father supported the idea and began planning to move there as well. While the father was more familiar with Charlotte, the mother suggested Greensboro and, in April 2022, the parties visited that area together with the children. After both the father and the mother approved of Greensboro, they were in frequent communication concerning their respective house-hunting efforts. By November 2022, the father had quit his job, started a new position in Greensboro and entered a contract to purchase a home there. However, after the father closed on his house in January 2023, the mother informed him that it was not financially feasible for her to buy a home in Greensboro and she would not be moving. Despite the father's efforts to help her find a suitable home there, the mother remained in New York with the children.
In May 2023, the father filed a custody modification petition seeking joint legal and primary physical custody of the children, with court permission for the children to relocate to North Carolina. Family Court held a fact-finding hearing, taking testimony from both parties. The court also conducted Lincoln hearings with each child. In August 2023, while the hearing was ongoing, the court granted the father temporary custody of the children so that they could be enrolled in school in North Carolina in time for the beginning of the school year. The hearing continued and, following its conclusion, the court granted joint legal custody to the parties, primary physical custody to the father and parenting time to the mother during spring break, for half of the summer, on certain holidays and at other times as the parties could agree. The mother appeals.
In a case such as this where the parties do not dispute that there has been a change in circumstances since the prior custody order, the relevant inquiry becomes whether modification of the custodial arrangement would be in the children's best interests (see [*2]Matter of Jason VV. v Brittany XX., 230 AD3d 1398, 1400 [3d Dept 2024]; Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1166 [3d Dept 2020]). Factors generally considered in a best interests analysis include "the quality of the home environment of each parent, the need for stability in the children's lives, the past performance of the parents and their ability to provide for the children, the wishes of the children and the degree to which each parent is willing to foster a positive relationship between the children and the other parent" (Matter of Jason VV. v Brittany XX., 230 AD3d at 1400). Additionally, in instances involving a potential relocation, "courts must consider, among other factors, each parent's reasons for seeking or opposing the move, the quality of the relationships between the child[ren] and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child[ren]'s future contact with the noncustodial parent, the degree to which the custodial parent's and child[ren]'s li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child[ren] through suitable parenting time arrangements" (Matter of Faea OO. v Isaiah PP., 220 AD3d 1132, 1133 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 41 NY3d 901 [2024]; see Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1997]). As the party seeking to relocate the children, the father bore the burden of establishing, by a preponderance of the evidence, that the proposed relocation was in the children's best interests (see Matter of Carol Q. v Charlie R., 230 AD3d 948, 950 [3d Dept 2024]; Matter of Alicia SS. v Andrew RR., 224 AD3d 1207, 1209 [3d Dept 2024]).
"A custodial determination depends to a great extent upon an assessment of the testimony, character and sincerity of the parties and, for this reason, it is well established that, given its superior position to observe the witnesses, deference is ordinarily accorded to Family Court's findings in this respect" (Matter of Ashley UU. v Ned VV., 235 AD3d 1200, 1201 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]). The court's conclusion will be upheld if it is supported by a sound and substantial basis in the record (see Matter of Christine EE. v David FF., 235 AD3d 1156, 1158 [3d Dept 2025]).
In a carefully considered, 27-page decision and order, Family Court found that both parents were fit, loving and able to provide the children with safe and supportive homes. In that regard, the court assessed the parties' respective financial situations, noting that the father had the greater income along with financial support from his wife, although the father also had a higher mortgage balance than the mother. The court additionally acknowledged that the mother's close bond with the children and the stability of their lives with her should not be disregarded[*3]. However, the court found it significant that the father, at the mother's urging, had undertaken herculean efforts to uproot his life and move several states away in order to remain close with the children, only for the mother to change her mind and decide to stay in New York after the father had already relocated. The court deemed the mother's reasons for doing so to be disingenuous — that is, not merely rooted in financial challenges but also "clearly personal in nature," insofar as the mother had failed to allocate available funds toward the move and refused to alter her strict criteria for an acceptable home, even after the father suggested several affordable possibilities. As to the mother's claim that she had asked the father to slow down his moving process and wait before making an offer on a home, the court expressly found this testimony not to be credible in light of contemporaneous text messages wherein the mother was encouraging the father's efforts and representing that she was actively house-hunting as well.
Family Court heavily weighed what it deemed to be the mother's unwillingness to foster a positive relationship between the father and the children against the father's demonstrated efforts to be supportive of the children's bond with the mother. The court found that, after the father relocated, the mother failed to encourage the children to remain in contact with him and deliberately scheduled a vacation with the children over Father's Day. Also concerning to the court was the mother's testimony in which she minimized the father's contributions as a parent and criticized him for minor transgressions. By contrast, the court found that the father encouraged the children to remain close with the mother, praised her parenting and was cooperative and practical in his communications with her.
Regarding the suitability of Greensboro, Family Court noted that it had been the mother's idea to move there in the first place in order to escape what she characterized as gang activity, frequent drug overdoses and crime in her neighborhood in the Village of Monticello, Sullivan County. The court credited the father's testimony that the children have adjusted well to life in Greensboro — taking advanced classes, participating in activities that were unavailable in Monticello and making new friends — and found that living there with the father "would enhance the opportunities of the children in every conceivable way," having "heard no credible evidence to the contrary." The court also noted that, while not determinative, a change in custody in favor of the father was supported by the attorney for the children.[FN1] In light of all of the foregoing, and deferring to the court's credibility assessments, we find that the court appropriately weighed the required factors and that its decision to award primary physical custody to the father is supported by a sound and substantial basis in the record (see Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1145[*4]-1146 [3d Dept 2024]; Matter of Jesse FF. v Amber GG., 222 AD3d 1254, 1258 [3d Dept 2023]; Matter of Faea OO. v Isaiah PP., 220 AD3d at 1135).
Egan Jr., J.P., Aarons, Pritzker and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: There are two appellate attorneys for the children and their positions are split. The appellate attorney for the oldest child supports custody remaining with the father, while the appellate attorney for the middle child and youngest child advocates for custody to be returned to the mother.