Matter of Elya L. v Aaron L.
2026 NY Slip Op 03864
June 18, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Elya L., Appellant,
v
Aaron L., Respondent.

Decided and Entered:June 18, 2026
CV-25-1720
Calendar Date: April 29, 2026
Before: Clark, J.P., Aarons, Pritzker, Mackey And Corcoran, JJ.

Thomas G. Shannan, Ithaca, for appellant.
The Walsh Law Firm, PC, Cortland (Ronald T. Walsh of counsel), for respondent.
Lisa K. Miller, McGraw, attorney for the child.

[*1]
Clark, J.P.
Appeal from an order of the Family Court of Tompkins County (Maura Kennedy-Smith, J.), entered September 25, 2025, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for permission to relocate with the subject child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2018). The parties divorced in 2019 and they both resided in the Rochester area for a period of time thereafter. By the terms of a January 2020 consent order, Family Court, Monroe County (Gordon, Referee) awarded the parties joint legal custody of the child, with the mother having primary physical custody and the father having a schedule of parenting time three days per week.
In 2022, the mother moved with the child to Tompkins County to live with her fiancÉ. The father relocated to Tompkins County to remain close to the child and initially exercised parenting time nearly every weekend pursuant to an informal arrangement with the mother. In April 2024, the mother and the fiancÉ had a discussion with the father about possibly relocating to Florida. The father opposed the move and thereafter filed a petition to modify the January 2020 order. In October 2024, Family Court, Tompkins County (Wallace, J.) issued a consent order that set forth a modified schedule of parenting time for the father on alternate weekends and, as relevant here, provided that "neither parent shall relocate outside of Tompkins County or a contiguous county" without the other's consent or judicial permission.
In May 2025, the mother commenced this proceeding pursuant to Family Court Act article 6 seeking permission to relocate with the child to Florida. She alleged that her fiancÉ had recently graduated from a master's program in exercise science and was having difficulty finding employment in Tompkins County, maintaining that he would have increased job opportunities in Florida and that relocating there would be financially advantageous for the child and would enhance their housing security. The father answered the petition and opposed the mother's request to relocate.
Following a fact-finding hearing, Family Court (Kennedy-Smith, J.) denied the mother's request for permission to relocate, finding that it was not in the child's best interests to move with the mother and her fiancÉ to Florida. Although the court noted that the mother had been the child's primary custodian since his birth, had done "the heavy lifting as a parent," and that her economic situation would be greatly improved if she were permitted to relocate, it expressed concern that the child, who has level 2 autism and receives special education services through an Individualized Education Plan (hereinafter IEP), would struggle with the transition to a new school and home environment away from the father, who had been an "involved" parent and had regularly exercised parenting time. Accordingly, the court found that the benefits of relocating [*2]did not outweigh the potential detriment to the child and dismissed the mother's petition. The mother appeals.FN1
We affirm. "The proposed relocation of a custodial parent provides the requisite change in circumstances required for Family Court to consider whether a modification of the existing custody order serves the best interests of the child[ ]" (Matter of Megan NN. v Michael NN., 210 AD3d 1357, 1358 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Celinda JJ. v Adrian JJ., 198 AD3d 1203, 1204 [3d Dept 2021], lv denied 37 NY3d 918 [2022]). In that regard, "[t]he parent seeking permission to relocate with the child bears the burden of establishing, by a preponderance of the evidence, that the proposed relocation is in the best interests of the child" (Matter of Thomas SS. v Alicia TT., 206 AD3d 1534, 1535 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]; Matter of Mark JJ. v Stephanie JJ., 240 AD3d 1025, 1027 [3d Dept 2025]). When undertaking this analysis, "courts must consider, among other factors, each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable parenting time arrangements" (Matter of Faea OO. v Isaiah PP., 220 AD3d 1132, 1133 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 41 NY3d 901 [2024]; see Matter of Tropea v Tropea, 87 NY2d at 740-741; Matter of Linden L. v Justin M., 246 AD3d 1226, 1227 [3d Dept 2026]). Family Court's credibility determinations and factual findings are entitled to deference on appeal, and its determination to grant or deny a relocation petition will not be disturbed if supported by a sound and substantial basis in the record (see Matter of Christopher MM. v Mackenzie NN., 237 AD3d 1271, 1274 [3d Dept 2025]; Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1233 [3d Dept 2023]; Matter of Anthony F. v Kayla E., 191 AD3d 1108, 1111 [3d Dept 2021], lv denied 37 NY3d 901 [2021]).
At the time of the fact-finding hearing, the child was residing in Cortland County with the mother and her fiancÉ in a short-term rental. They had recently moved out of their residence in Tompkins County due to safety concerns but planned to move back to Tompkins County once their lease expired in the event they were not permitted to relocate to Florida. The hearing testimony established that the mother has been the child's primary caretaker since birth and that he is bonded with her fiancÉ. However, the child is also bonded with the father, who has been an [*3]involved parent and lived in close proximity to the child at the time of the fact-finding hearing.FN2 The child also has a relationship with the paternal grandparents, who live approximately 30 minutes from the father's residence. The maternal grandmother also resides in upstate New York.
The mother revealed that her primary motivation for relocating to Florida was to enhance the child's economic and educational opportunities. In that regard, the mother was employed in a part-time position at Wegman's grocery store at the time of the hearing and she was also receiving child support payments from the father. The fiancÉ worked two jobs in 2024 to afford his expenses and had recently started a part-time position at a retirement community approximately 45 minutes away from their residence, confirming that he had applied for "roughly 25" jobs in his field of study within the three months preceding the fact-finding hearing but was having trouble finding a full-time position that paid enough. By the time of the fact-finding hearing, the fiancÉ had received a job offer in Florida that would pay him substantially more than he was making in New York.FN3 He confirmed that, although he would do anything necessary to support the child, it would be very difficult for him and the mother financially if they were required to stay in New York. The mother echoed that sentiment.
If permitted to relocate to Florida, the mother planned to reside with the child and the fiancÉ in a three-bedroom house owned by the fiancÉ's father, who the child had only met in person on a few occasions. The fiancÉ's father testified that he would only require the mother and the fiancÉ to pay the monthly utility bill for the first year and would thereafter charge them minimal rent. The fiancÉ's sister, her boyfriend and their two children, whom the subject child had never met, lived in the guest house on the property. Based upon these circumstances, the mother and the fiancÉ expected to be able to save money if permitted to relocate to Florida and intended to build a house with the savings.
As for the potential impact of the proposed relocation on the child's educational opportunities, at the time of the fact-finding hearing, the child was attending elementary school in the public school district, where he received speech and occupational therapy, had an IEP, and had just finished the school year in a "very successful" classroom. The mother had secured a spot for the child at an elementary school near where she and the fiancÉ intended to reside in Florida, explaining that she had met with the head of the district's special education program and confirmed that they could accommodate the child's IEP and all of the services he was receiving in New York. Nevertheless, the parties each independently confirmed that the child struggles with transitions and there was testimony that he had been "pretty stressed out" when he previously moved classrooms in the school he was attending at the time of [*4]the fact-finding hearing.
With respect to facilitating contact with the father if permitted to relocate, the mother's proposed plan would have provided the father with 65 days of parenting time per year in contrast with the 45 days he was receiving under the plan then in existence. The plan involved the mother flying to New York with the child every summer so he could spend seven to eight weeks with the father, who is employed as a truck driver. The mother acknowledged, however, that the child had never been on an airplane and that he requires a consistent routine.
Applying the relevant relocation factors, we discern no basis upon which to disturb Family Court's determination. There is no dispute that the mother has been the child's primary custodian since birth and that her financial situation would improve if she were permitted to relocate to Florida, which would also inevitably benefit the child. However, that is not the end of the analysis, as the economic benefit of the proposed move is only one of several factors to consider when analyzing whether an out-of-state relocation is in the child's best interests (see Matter of Daniel G. v Marie H., 196 AD3d 801, 810 [3d Dept 2021]). Here, nothing in the record suggests that the child was not being adequately supported in New York. He is bonded with the father and the paternal grandparents. Although the mother's proposed parenting time schedule would have provided the father with more days with the child on a yearly basis, moving the child to Florida would decrease the frequency of his in-person contact with the father and his family members, thereby potentially having a negative impact on those established relationships (see Matter of Southammavong v Sisen, 141 AD3d 905, 906-907 [3d Dept 2016]; Matter of Cowper v Vasquez, 121 AD3d 1341, 1343 [3d Dept 2014], lv denied 24 NY3d 913 [2015]; Matter of Scheffey-Hohle v Durfee, 90 AD3d 1423, 1427 [3d Dept 2011], appeal dismissed 19 NY3d 876 [2012]; Matter of Solomon v Long, 68 AD3d 1467, 1469 [3d Dept 2009]). Moreover, the child had a successful IEP in place at the school he was attending at the time of the fact-finding hearing, had previously struggled with a transition to a new classroom in a school he was attending and greatly benefited from a consistent routine. Accordingly, Family Court had a founded concern that the child might struggle to transition to "a new place, a new school, away from one of his parents, and away from extended family," where he would be "surrounded by a new and unfamiliar extended family of [the] fiancÉ." The hearing testimony also raised a legitimate concern about the impact on the child from the disruption that would inevitably flow from the mother's proposal to transport him back and forth from Florida every summer to see the father. In addition, the father may not have been able to accommodate the mother's proposed schedule due to the nature of his employment. When considering all relevant factors, Family Court's determination [*5]that it was not in the child's best interests to relocate with the mother to Florida has a sound and substantial basis in the record and will not be disturbed (see Matter of Carr v Thomas, 169 AD3d 903, 904-905 [2d Dept 2019]; Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1274 [3d Dept 2018]; compare Matter of Amber GG. v Eric HH., 217 AD3d 1103, 1105-1106 [3d Dept 2023]).FN4 The mother's remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Aarons, Pritzker, Mackey and Corcoran, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1
The attorney for the child (hereinafter the AFC) argues that Family Court erred in denying the mother's relocation petition and should have held a Lincoln hearing before rendering its determination. To the extent the AFC seeks remittal of the matter for a Lincoln hearing, no appeal was taken on behalf of the child and the AFC cannot seek affirmative relief beyond what the mother is seeking (see Matter of Ava OO. [Michael NN.], 235 AD3d 1135, 1136 n [3d Dept 2025]). In any event, the child was of tender age at the time of the fact-finding hearing and the record was sufficiently developed for Family Court to make an informed best interests determination without hearing directly from the child (compare Matter of Norback v Norback, 114 AD3d 1036, 1037 [3d Dept 2014]). In these circumstances, Family Court did not abuse its discretion in declining to hold a Lincoln hearing.

Footnote 2
Following the father's relocation to Tompkins County in or around 2022, he exercised parenting time with the child nearly every weekend from Saturday morning until Sunday evening and on occasional Fridays. In April 2024, the mother and the fiancÉ approached the father about moving to Florida. The father testified that, when he denied his consent to the move, the mother revoked her consent to the informal parenting time arrangement by which they had been abiding.

Footnote 3
The fiancÉ's father, who owns his own company, testified at the fact-finding hearing that he also had a job for the fiancÉ in Florida if the other opportunity did not work out.

Footnote 4
During the mother's hearing testimony, she revealed that the father had perpetrated acts of domestic violence against her during their relationship, which precipitated her decision to obtain a divorce. Family Court credited such testimony in its decision and appropriately took the father's domestic violence history into account when rendering its determination. However, the court noted that the domestic violence was "remote in time" and that there was "no evidence that it ha[d] impeded the parties' ability to communicate or that the father presently pose[d] a danger to [the child]." Family Court's findings in this regard are supported by a sound and substantial basis in the record and the father's history of domestic violence, while relevant, is not dispositive to the relocation determination (see Matter of Mallory v Jackson, 51 AD3d 1088, 1090 [3d Dept 2008], lv denied 11 NY3d 705 [2008]).